## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTERONE ACETATE) PRODUCTS LIABILITY LITIGATION | Case No. 3:25-md-3140 |
| This Document Relates to: *Daniels*, Case No. 3:25-cv-00798 | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

## <u>ORDER</u>

Four motions are pending:  Plaintiff Vicki Daniels's Motion to Remand (ECF No. 6), Daniels's Motion for Leave to File Amended Complaint (ECF No. 44), Defendant Pfizer Inc.'s Motion to Dismiss (ECF No. 37), and Defendant Walgreen Co.'s Motion to Dismiss (ECF Nos. 39, 40).  After thorough consideration and for the reasons below, the Court will deny Daniels's Motion to Remand and dismiss Walgreens.  Consequently, Walgreens's Motion to Dismiss is moot.  Daniels's motion for leave to amend her complaint to join Planned Parenthood as a defendant will also be denied,[1] and a ruling on Pfizer's Motion to Dismiss will be deferred.

The instant case is part of a multidistrict litigation involving over 1,100 cases related to claims that the depot formulation of the contraceptive drug medroxyprogesterone acetate, more commonly known by the brand name Depo-

---

[1] Plaintiff may still amend her Complaint to comply with the requirements of Pretrial Order No. 23.

Provera, causes meningiomas—i.e., a type of brain tumor originating in the meninges, the membranes surrounding the brain and spinal cord. According to Daniels, her meningiomas were caused by her use of Depo-Provera, which is designed and marketed by Pfizer and which she began receiving from Walgreens and Planned Parenthood around 1992.

Daniels filed suit on December 31, 2024, in the Circuit Court of the Twentieth Judicial Circuit for St. Clair County, Illinois, asserting claims for failure to warn and design defect against Pfizer, Walgreens, and now-dismissed authorized generic Defendants, Greenstone LLC, Viatris Inc., and Prasco, LLC. Greenstone and Viatris removed on fraudulent joinder grounds to the Southern District of Illinois on February 7, 2025. ECF No. 1. On February 9, 2025, Daniels filed an "emergency" motion to remand for lack of diversity jurisdiction, arguing that she and Walgreens are both citizens of Illinois. ECF No. 6. Pfizer and Walgreens moved to dismiss. ECF Nos. 37, 39, 40.[2] Nearly three months after removal, Daniels requested leave to file an amended complaint to join an additional, Illinois-based defendant, Planned Parenthood of Great Rivers. ECF No. 44.

The four motions remained pending on June 10, 2025, when the Judicial Panel on Multidistrict Litigation ("JPML") transferred this case to the MDL. *See* ECF No.

---

[2] Greenstone, Viatris, and Prasco sought and received an extension for filing their responsive pleadings (*see* ECF Nos. 34, 35, 42, 43), and the case was transferred to the MDL before their pleadings were due (ECF No. 53).

52 at 1.  Shortly after, the authorized generics were dismissed from the case, and the undersigned ordered supplemental briefing since the motions had been based on Seventh, not Eleventh, Circuit precedent, and Eleventh Circuit case law now applies where federal law is at issue.  ECF No. 55 at 1.  The Court held oral arguments on the motions on August 22, 2025, after which the undersigned invited the Parties to submit additional briefing which they did.  ECF Nos. 85, 87, 88, 89.

## I.    Motion to Remand/Fraudulent Joinder

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  A defendant may remove a civil case filed in state court to federal court if the federal court has original jurisdiction.  *See* 28 U.S.C. § 1441(a). The burden to establish federal subject-matter jurisdiction rests on the removing party.  *Bowling v. U.S. Bank Nat'l Ass'n, As Tr. for C-Bass Mortg. Loan Asset-Backed Certificates, Series 2007-SP2*, 963 F.3d 1030, 1034 (11th Cir. 2020). District courts have original diversity jurisdiction where the amount in controversy exceeds $75,000 and the suit is between citizens of different states.  *See* 28 U.S.C. § 1332(a).  With diversity, "all plaintiffs must be diverse from all defendants." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999).

An action that fails complete diversity may nevertheless be removable if the non-diverse parties were fraudulently joined.  *Triggs v. John Crump Toyota, Inc.*,

154 F.3d 1284, 1287 (11th Cir. 1998).  This is because where joinder was fraudulent, "the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court."  *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).  "As an MDL court sitting in the Eleventh Circuit, this Court applies the Eleventh Circuit's fraudulent joinder standard."  *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734, 2018 WL 6258903, at *2 (N.D. Fla. Nov. 8, 2018) (collecting cases).

To determine whether joinder is fraudulent, courts examine a plaintiff's pleadings at the time of removal and any affidavits and deposition transcripts submitted by the parties.  *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).  In fact, the "proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment."  *Legg v. Wyeth*, 428 F.3d 1317, 1322–23 (11th Cir. 2005) (internal quotations omitted).  Courts "must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor."  *Pacheco de Perez*, 139 F.3d at 1380.  The federal court must remand the case "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint" and the undisputed evidence presented by the parties.  *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1298–99 (11th Cir. 2007) (stating joinder is not fraudulent if there is "even an

arguable claim"); *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (explaining that to establish fraudulent joinder, a removing defendant must show by clear and convincing evidence that there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant, or the plaintiff has fraudulently pled jurisdictional facts and recognizing this as a heavy burden); *id.* at 1541–42 ("[A]fter drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved.") (internal quotations omitted); *Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)[3] ("[T]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard.").  At the same time, in deciding whether there is "[t]he potential for legal liability," the Eleventh Circuit instructs that such "potential . . . 'must be reasonable, not merely theoretical.'"  *Legg*, 428 F.3d at 1325 n.5 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002)) (explaining that "possible" liability requires a claim that, "applying reason and common sense," can be considered viable).  Further, although "all doubts about

---

[3] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) (adopting the case law of the former Fifth Circuit before October 1, 1981, as precedent in this Circuit).

jurisdiction should be resolved in favor of remand to state court," *Univ. of S. Ala.*, 168 F.3d at 411, "that does not mean the Court must close its eyes to reality." *In re Roundup Prod. Liab. Litig.*, No. 16-md-02741, 2021 WL 4186714, at *2 (N.D. Cal. Sept. 15, 2021) (denying motion to remand due to fraudulent joinder). "[T]he Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3641 (3d ed.) (alteration in original) (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)).

Daniels first argues that removal was improper under the forum defendant rule, which bars removal to federal court "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Defendants argue in response that Walgreens was fraudulently joined, and a fraudulently joined defendant cannot be "properly joined and served," *id.*; thus, the fraudulent joinder doctrine is an exception to the forum defendant rule. ECF No. 80 at 12 (Br. at 7) (citing *Sullivan v. Bottling Grp. LLC*, No. 8:13-CV-515-T-33MAP, 2013 WL 3209464, at *3 (M.D. Fla. June 24, 2013)). The undersigned agrees. Moreover, the out-of-circuit authority relied on by Daniels is not persuasive, is not applicable on the facts at issue here, and, in fact,

some of the cases Daniels cites run counter to her argument. *See Morris v. Nuzzo*, 718 F.3d 660, 667 (7th Cir. 2013) (discussing fraudulent joinder of a diverse *resident* defendant rather than "joinder of a *nondiverse* resident defendant" (emphasis added)); *Long v. John Crane, Inc.*, No. 23-CV-1152-JPG, 2023 WL 4558513, at *4 (S.D. Ill. July 17, 2023) (noting that "some district courts in the Seventh Circuit have applied the fraudulent joinder doctrine to the forum defendant rule and found that a fraudulently joined resident defendant will not preclude removal by a nonresident defendant"); *see also Midland Mgmt. Co. v. Am. Alternative Ins. Corp.*, 132 F. Supp. 3d 1014, 1023 (N.D. Ill. 2015) ("The Seventh Circuit in no way suggested in *Morris* that the fraudulent joinder doctrine could not be used to oust a *non*-diverse defendant, just because that defendant happens to also be a resident of the state in which the suit was brought.").

Daniels next argues that removal on fraudulent joinder grounds was improper because she has a valid failure-to-warn claim against Walgreens under Illinois law. Again, the undersigned disagrees. Illinois pharmacies have no duty to warn patients/consumers or doctors of the adverse effects of the prescription drugs they dispense, absent one narrow circumstance, discussed below. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2010 WL 4904478, at *3 (S.D. Ill. Nov. 24, 2010) ("Illinois Courts have consistently held, absent certain exceptions . . . , a pharmacist does not have an

affirmative duty to warn."); *see also Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551, 552–53 (Ill. Ct. App. 1985) ("The court also noted the overwhelming majority of cases from other jurisdictions stood for the proposition that a pharmacist has no duty to warn.").  This long-standing principle stems from the recognition that "the foreseeability of injury to an individual consumer 'varies greatly depending on the medical history and condition of the individual,'" and the law "'cannot reasonably expect the pharmacist to know'" those patient-specific facts for every prescription drug dispensed.[4] *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1127 (Ill. 2002) (quoting *Leesley v. West,* 518 N.E.2d 758, 762 (Ill. App. Ct. 1988)).  Illinois courts further recognize that:

> Determining which medication is to be utilized in any given case requires an individualized medical judgment, which, in our opinion, only the patient's physician can provide.  That physician, having prescribed the drug, presumably knows the patient's current condition, as well as the patient's complete medical history.  To impose a duty to warn on the pharmacist would be to place the pharmacist in the middle of the doctor-patient relationship, *without* the physician's knowledge of the patient.

*Fakhouri v. Taylor*, 618 N.E.2d 518, 521 (Ill. App. Ct. 1993); *see also Jones v. Irvin*, 602 F. Supp. 399, 402 (S.D. Ill. 1985) ("Placing these duties to warn on the

---

[4] Illinois law ensures that the patient is informed instead by the duty imposed on the drug manufacturer to warn the physician of the possible side effects of a medication.  *Happel v. Wal-Mart Stores, Inc.*, 737 N.E.2d 650, 655 (Ill. App. Ct. 2000), *aff'd*, 766 N.E.2d 1118 (Ill. 2002).

pharmacist would only serve to compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability.").

In 2002, the Illinois Supreme Court reaffirmed this principle but at the same time carved out a narrow exception for cases in which the pharmacy has special knowledge that a patient/consumer is susceptible to adverse consequences of the drug being dispensed. *See Happel*, 766 N.E.2d at 1129 (recognizing a narrow duty to warn *only* where the dispensing pharmacy was aware of the patient's allergies and knew that the drug being prescribed was contraindicated as a result and not otherwise, because a general duty to warn would place the pharmacist in the middle). The court confirmed that notwithstanding this narrow exception, pharmacies have no duty to investigate and learn about the patient/consumer's condition or monitor for contraindications in the absence of "special circumstances." *Id.* at 1124–25, 1127–29. In carving out a narrow exception and rejecting a general duty to warn on the part of dispensing pharmacies, the court relied on two out-of-state court decisions, which are instructive: *McKee v. Am. Home Products, Corp.*, in which the court held that while a pharmacist has a duty to be "alert for clear errors or mistakes in the prescription," there is no "duty to question a judgment made by the physician as to the propriety of a prescription or to warn customers of the hazardous side effects associated with a drug," 782 P.2d 1045, 1055–56 (Wash. 1989); and *Morgan v. Wal-Mart*, in which the court held that "pharmacists have no generalized duty to

warn patients of potential adverse reactions to prescription drugs absent some special circumstances" and recognized that the "imposition of a generalized duty to warn would unnecessarily interfere with the relationship between physician and patient by compelling pharmacists seeking to escape liability to question the propriety of every prescription they fill," 30 S.W.3d 455, 467, 469 (Tex. App. 2000).  *Happel*, 766 N.E.2d at 1129.  By incorporating these decisions, the Illinois Supreme Court left no doubt as to the limited nature of its holding and the narrow duty imposed on pharmacists under Illinois law.

In this case, the complaint does not allege any facts to even suggest Walgreens was aware of special circumstances that would have placed Daniels at increased risk of injury from the use of Depo-Provera.  Instead, in her briefing, she argues in a conclusory fashion that Walgreens had "superior knowledge" that she would be injured by Depo-Provera "[g]iven that Ms. Daniels underwent surgery and radiation in 2022, and was prescribed dozens of related medications that would have been in her pharmaceutical file."[5]  ECF No. 6 at 14 (Br. at 12); ECF No. 74 at 15–16 (Br. at 9–10); *see also* ECF No. 82 at 36 (Br. at 27) (arguing that "Walgreens also had data on how many of the patients that were prescribed Depo-Provera were later prescribed drugs that suggested the patient was suffering from meningiomas.  In

---

[5] This is a statement by counsel in briefing. There is no allegation in the complaint that Daniels had been prescribed any other medications; only that she underwent surgery and received "radiotherapy treatments."

other words, it would have taken little effort on Walgreens's part to learn that Depo-Provera was causing its customers' meningiomas."). Daniels's assertion that this argument is sufficient for the imposition of a duty under Illinois law is beyond a plausible stretch and flies in the face of Illinois law. *See Happel*, 766 N.E.2d at 1124–25, 1127–29 (pharmacies have no duty to investigate or monitor for contraindications in the absence of "special circumstances"); *see also Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011) (recognizing that "[i]t would be senseless, especially given drug regulation by the Food and Drug Administration and the extensive tort liability of drug manufacturers, to make pharmacies liable in tort for the consequences of failing to investigate the safety of thousands of drugs"); *cf. Hernandez v. Walgreen Co.*, 49 N.E.3d 453, 464 ("[R]egardless of whether a pharmacist may access the prescription history of a particular patient, that fact is not sufficient to impose duties to: (1) monitor the patient's prescription history, (2) determine whether prescriptions were 'excessive'; or (3) warn the prescribing physician or the patient of that determination."). Moreover, requiring "the pharmacist to learn the customer's condition and monitor his drug usage" would impermissibly result in the pharmacist having "to interject himself into the doctor-patient relationship and practice medicine without a license." *Eldridge*, 485 N.E.2d at 553.

Here, it is plausibly inferred from the allegations of the complaint, and confirmed in Daniels's briefing, that after Walgreens filled her Depo-Provera prescription, she took the drug to her healthcare provider to administer via an injection. *See* Compl., ECF No. 1-1 at ¶¶ 3, 7,[6] 94, 143, 229 (while noting that sometimes a patient can self-administer the drug, the complaint alleges that healthcare providers administered it to Daniels); ECF No. 6 at 15 (Br. at 13) (confirming in briefing that "Walgreens sold the product to Plaintiff who then took it back to her physician for the physician to administer the product"). Given these facts, there is no question that interjecting a duty to warn on the part of Walgreens in this case could interfere with the prescribed treatment and disrupt the physician-patient relationship.

Daniels also argues that a finding by the Court that dispensing pharmacies have no duty to warn under Illinois law would be an improper application of the learned intermediary doctrine to non-manufacturers. First, this argument is confusing, given that the learned intermediary doctrine is a defense, and the question before the undersigned is whether a claim exists, not whether a claim should exist. Beyond that, the Seventh Circuit has explained that the learned intermediary doctrine's logic "applies differently" to pharmacies than to manufacturers precisely

---

[6] The Complaint repeats numbering of paragraphs 1 through 31; ¶¶ 3 & 7 cited here are on page 7 of ECF No. 1-1.

because of the extremely limited duty to warn imposed on a pharmacy.[7] *See Walton*, 643 F.3d at 1000–01 (noting that most courts reach this result without calling it an application of the "learned intermediary doctrine" and stating, despite Illinois's use of the term, the result is the same—the pharmacy had no duty to warn where it had no knowledge of the plaintiff's susceptibility to an adverse effect); *see also In Re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 692 F. Supp. 2d 1012, 1019–20 (S.D. Ill. 2010) (finding no support for the contention "that a pharmacy is only protected from liability where the manufacturing defendant has provided the prescribing physicians with adequate warnings"), *aff'd*, 643 F.3d 994 (7th Cir. 2011); *In re Yasmin & Yaz*, 2010 WL 4904478, at *1, *3–4 (rejecting the argument "that a pharmacy is shielded from liability for failure to warn if and only if the manufacturing defendant has provided the prescribing physicians with adequate warnings"). The undersigned finds the Seventh Circuit's reasoning in *Walton* persuasive and equally applicable here. Daniels's claim is not viable because there is no duty to warn on these facts.[8]

---

[7] For instance, the Illinois Court of Appeals recognized in the underlying *Happel* decision that its decisions had "extended the learned intermediary doctrine to pharmacists by precluding the imposition of a duty to warn" and further explained that those "cases teach that the law does not impose upon the pharmacist a generalized duty to warn." *Happel*, 737 N.E.2d at 655.

[8] Daniels also cites the common defense rule in support of remand, which refers to the principle that if "a defense [is] common to all the defendants, the case has to be remanded to the state court." *Walton*, 643 F.3d at 1001. Plaintiff acknowledges that the Eleventh Circuit has not adopted the rule. *See Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 866, 872 n.4 (11th Cir. 2015). The undersigned declines Daniels' invitation to assume that the Eleventh Circuit will at some point adopt the common defense rule. *See Byrnes v. Small*, 60 F. Supp. 3d 1284, 1288 (M.D. Fla. 2014)

Daniels further argues that her design defect strict liability claim is recognized and viable under Illinois law and, thus, Walgreens was not fraudulently joined. Daniels contends that Illinois law "imposes liability on every entity in the distributive chain—from the company that designs the product, to the store that sells the product, and everyone in between." ECF No. 89 at 8 (Br. at 3) (relying, *inter alia*, on *Cassidy v. China Vitamins, LLC*, 120 N.E.3d 959, 968 (Ill. 2018)). In *Cassidy,* the Illinois Supreme Court underscored that "each of the defendants in the product's chain of distribution may be held jointly and severally liable, regardless of its actual culpability in causing the injury." 120 N.E.3d at 968. Daniels argues that because Walgreens was in the distribution chain for Depo-Provera, it can be sued for design defect under Illinois law. Pfizer disagrees, arguing that "Walgreens is not alleged to have had any role in the design, development, manufacture, or marketing of Depo-Provera" and that there is no support for a strict liability design defect claim against a *dispensing pharmacy* under Illinois law. ECF No. 80 at 20 (Br. at 15); ECF No. 87 at 2, 7 (Br. at 1, 6).[9]

After a thorough review of the case law on this issue, the undersigned is convinced that Illinois law does not recognize a claim for strict liability design defect

---

("[T]he 'common defenses' rule is not binding law in the Eleventh Circuit, which has expressly avoided relying on it, indicating a reluctance to adopt it.").

[9] Walgreens did not file a motion to dismiss on this ground, which Daniels says is the death knell. The undersigned disagrees.

against a dispensing pharmacy for a prescription drug.[10]  As Pfizer correctly notes, and Daniels correctly concedes, no Illinois case recognizes a design defect claim in this context—none.  Daniels's reliance on *Cassidy* is misplaced because the court was not discussing a prescription-dispensing pharmacy but rather a manufacturer and ordinary distributor/seller (in that case, of flexible bulk containers).   More importantly, even construing Illinois law in the light most favorable to Daniels, the law is to the contrary.  Daniels's argument, again, was rejected in the *Yaz* MDL.  *See In Re Yasmin & Yaz*, 692 F. Supp. 2d at 1032 n.5 ("To the extent Plaintiff's complaint attempts to allege" claims of strict liability and negligence design or manufacturing defect "against Niemann Foods, a non-manufacturing pharmacy, her claims must fail.").  Indeed, under Illinois law, there is a decades-long recognition of the need to shield healthcare providers who "pledge[] to protect human life and health," in part by implementing a public policy that "dictates against the imposition of strict liability" in order to avoid a diminution in those protections.  *See Kirk v. Michael Reese Hosp. and Med. Ctr.*, 513 N.E.2d 387, 394–95 (Ill. 1987) (quoting *Greenberg v. Michael Reese Hosp.*, 415 N.E.2d 390, 394 (Ill. 1980)).  According to the Illinois Supreme Court, this policy is intended to be protective in that it

---

[10] Again, Daniels relies on a defense for her argument, this time the Innocent Seller Statute. *See* 735 ILCS 5/2-621.  Unfortunately for Daniels, the Innocent Seller statute says nothing about the policy protections afforded to dispensing pharmacies under Illinois law and would apply—if and only if—a design defect claim existed.

establishes a "special standard for prescription drugs," which in turn represents "an understandable exception to the Restatement's general rule" that would otherwise impose strict liability in the marketing chain.  *Id.* (quoting *Stone v. Smith, Kline & French Lab'ys*, 731 F.2d 1575, 1579 (11th Cir. 1984)) (finding a hospital not strictly liable and recognizing that "the marketing situation as regards prescription drugs and vaccines is a unique one" (citation omitted)); *Leesley*, 518 N.E.2d at 763 (noting Illinois "legislative policy against expanding the liability risks of health professionals").  This policy protection has been repeatedly extended to pharmacies in connection with the dispensing of prescription drugs, as seen in the duty to warn context.  *See Happel*, 766 N.E.2d at 1127 (collecting cases where "pharmacists should not have a duty to warn a patient or physician of the adverse side effects of prescription drugs").  Other cases are in accord with the view that Illinois pharmacies should not be strictly liable for dispensing prescription drugs to patients/consumers. *See Leesley*, 518 N.E.2d at 763 (citing approvingly to *Ramirez v. Richardson-Merrell, Inc.*, which underscored that "there is a convincing argument to be made that retail pharmacists" in particular "should not be held strictly liable for injuries sustained as the result of the ingestion of certain drugs," because that duty "would impose on the retail druggist the obligation to test, at its own expense, new drugs" and in turn the "costs to society which needs and values the pharmaceutical products sold by druggists, would be unduly high." 628 F. Supp. 85, 87 (E.D. Pa. 1986))*; see*

*also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 292 (S.D.N.Y. 2001) (recognizing that "[o]ne of the purposes of imposing strict liability . . . on retailers is to encourage retailers to pressure manufacturers to make safer products," but "this goal is lost on pharmacists, who have little or no impact on a manufacturer's marketing of prescription drugs").

Finally, the Court has considered the "pharmaceutical action" cases Daniels cites and finds them materially distinguishable and unpersuasive. *Halperin v. Merck, Sharpe & Dohme Corp.* involved "a wholesale drug distributor of" a drug— not a pharmacy. No. 11 C 9076, 2012 WL 1204728, at *1 (N.D. Ill. Apr. 10, 2012). *Guvenoz v. Target Corp.* specifically addressed certified questions regarding preemption of claims as to a later-recalled opioid medication. 30 N.E.3d 404, 410 (Ill. App. 2015). Likewise, *Valadez v. GlaxoSmithKline LLC* was a case where the pharmacy defendants were dismissed on preemption grounds and, therefore, did not appear to address Illinois law on strict liability as to pharmacies outside of that context. *See* No. 1-24-1292, 2025 WL 1780620, at *1 (Ill. App. June 27, 2025).

Accordingly, the Court concludes that Illinois law does not recognize either a failure to warn or design defect claim against a dispensing pharmacy like Walgreens (on the facts alleged), and thus remand is denied due to fraudulent joinder.[11]

---

[11] Plaintiff also argues that "because the fraudulent joinder doctrine is atextual, it should never be applied." ECF No. 74 at 2, 14–15 (Br. at 8, 20–21). The undersigned rejects this novel legal argument out of hand.

## II.    Motion to Amend/Post-Removal Joinder of Non-diverse Party

After the time has passed to amend as a matter of course, a "party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Post-removal, though, courts specifically analyze joinder of a non-diverse party under 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."). *See Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir. 1998).  In this instance, "the district court should more closely scrutinize the pleading and be hesitant to allow the new non-diverse defendant to join" in comparison with usual joinders of new defendants.  *Reyes v. BJ's Restaurants, Inc.*, 774 F. App'x 514, 517 (11th Cir. 2019).  This requires a discretionary balancing of "the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits," guided by four factors: "(1) the plaintiff's motive for seeking joinder; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if amendment is not allowed; and (4) any other relevant

equitable considerations." *Id.* (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)).

First, Daniels argues that the Rule 15 standard should be applied and thus leave to amend should be freely given. This argument is foreclosed by the statute, which plainly applies to a request to join a non-diverse party after removal, which is the case here. *See also Ingram*, 146 F.3d at 862 (stating the district court should consider § 1447(e) where post-removal joinder is at issue). Turning to the four *Hensgens* factors, Daniels argues that her motive in seeking to add Planned Parenthood is not to defeat jurisdiction but simply to join a party that "prescribed, sold, and/or administered many of the Depo-Provera injections she received." ECF No. 71 at 14 (Br. at 10). She also disavows an improper motive by virtue of the fact that she had already named Walgreens as a non-diverse defendant at the time she sought to add Planned Parenthood. This latter argument goes nowhere because Walgreens was fraudulently joined. And, as for Daniels's first argument that her purpose in seeking to add Planned Parenthood was in no way an effort to defeat diversity jurisdiction, the undersigned cannot agree. Daniels sought to add Planned Parenthood, a non-diverse defendant, only after removal despite having expressly identified Planned Parenthood, together with Walgreens, in her original complaint as entities from which she received Depo-Provera. Compl., ECF No. 1-1 at 4, ¶ 17. Obviously, Daniels's counsel knew of both Walgreens's and Planned Parenthood's

roles at the time the original complaint was filed but made a conscious decision to name only Walgreens as a defendant, expressly noting in the complaint that Planned Parenthood was a "non-Party." *See id.* In light of this, the undersigned can only conclude that Daniels's motive in seeking to add Planned Parenthood post-removal is to defeat federal jurisdiction. *See Heitman v. Aziyo Biologics, Inc.*, No. 3:24-CV-61-MCR-ZCB, 2024 WL 4023193, at *4 (N.D. Fla. June 20, 2024); *Linares v. Home Depot U.S.A., Inc.*, No. 12-60308-CIV, 2012 WL 1441577, at *2 (S.D. Fla. Apr. 26, 2012).

For the second factor, Daniels insists she has not been dilatory in seeking to amend, nor has she acted in a way that delays the progress of the case. Again, the undersigned disagrees. "A plaintiff is dilatory in adding a non-diverse party when the plaintiff waits an unreasonable amount of time before asking for an amendment, despite having been able to ascertain the party's role in the suit all along." *Hickerson v. Enter. Leasing Co. of Georgia, LLC*, 818 F. App'x 880, 886 (11th Cir. 2020). That is the exact situation here. Daniels was aware of Planned Parenthood's role in providing her Depo-Provera from the outset and, as noted, certainly her counsel also knew at the time she filed her initial complaint referencing Planned Parenthood on December 31, 2024—yet she did not seek to add it as a party for nearly five months, which was three months after removal and one month after Defendants' motions to dismiss. *See Heitman*, 2024 WL 4023193, at *5 ("[T]he Heitmans' filing of their

FAC less than a month after removal, although relatively prompt, still does not support joinder."); *Seropian v. Wachovia Bank, N.A.*, No. 10-80397-CIV, 2010 WL 2822195, at *4 (S.D. Fla. July 16, 2010) ("While the motion to amend was filed close in time to removal (approximately 23 days after removal), there was no valid reason for waiting to add Colton as a defendant. Indeed, despite knowledge of both Colton's identity and her purported role in the underlying facts since at least October 2009, Plaintiffs did not seek to include her as a defendant until after removal."); *Ibis Villas at Miami Gardens Condo Ass'n, Inc. v. Aspen Specialty Ins. Co*., 799 F. Supp. 2d 1333, 1336 (S.D. Fla. 2011) (Plaintiff "had more than ample time to conduct the requisite pre-suit 'investigation,'" and "the original complaint was filed three full months before the defendants removed the action," so "the only reasonable explanation for the timing of [plaintiff's] motion for joinder is that it was designed to destroy jurisdiction and remand this matter back to state court.").

Regarding the third factor, Daniels argues she would be significantly injured in the prosecution of her case if not allowed to add Planned Parenthood because Defendants could blame the absent party or parties. This argument was rejected by the Eleventh Circuit in *Hickerson*. *See* 818 F. App'x at 886 (concluding that the plaintiff would not be denied a full remedy because she could still pursue her claims in state court). Daniels has not articulated a significant injury if amendment is disallowed. She has not asserted that the statute of limitations has run. While

inconvenient, Daniels could separately pursue her claims against Planned Parenthood in parallel state court litigation. As for the fourth and final factor, the undersigned is not aware of any other relevant equitable factors worthy of consideration, given the above. The balance of factors weighs decidedly in favor of Defendants' election of a federal forum, and the Court exercises its discretion under § 1447(e) to deny joinder.

## III.    Motions to Dismiss

Because Walgreens was fraudulently joined, it will be dismissed, and the Court need not address the substantive arguments made in Walgreens's motion to dismiss. Pfizer has also filed a motion to dismiss; however, because the issues of pleading raised in that motion would impact the MDL more generally, Pfizer's arguments would be better addressed through the Pilot cases in this litigation. The Court will defer ruling on the substance of that motion.

## IV.    Conclusion

Accordingly, Daniels's Motion For Remand to State Court, ECF No. 6, is **DENIED** and Defendant Walgreens is **DISMISSED** from this action. Daniels's Motion for Leave to File Amended Complaint (to add Planned Parenthood), ECF No. 44, is **DENIED**; however, she may still amend her Complaint without leave of Court to comply with the requirements of Pretrial Order No. 23. Pfizer Inc.'s Motion

to Dismiss, ECF No. 37, is **DEFERRED**.

      **SO ORDERED** this 22nd day of September, 2025.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**